IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DAVID SHAWN BURNETT,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CV 15–61–BU–BMM–JCL<br><br>FINDINGS & RECOMMENDATION |

Plaintiff David Shawn Burnett brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-433. Burnett alleges disability since February 10, 2010, due to post traumatic stress disorder, chronic migraines, degenerative disk disease, major depressive disorder, and bilateral patellofemoral pain. (AR 83). Burnett's claim was denied initially and on reconsideration. (69-97). Burnett appeared with counsel at an administrative hearing in front of an administrative law judge (ALJ) on March 10, 2015. (AR 43-68). On May 6, 2015, the ALJ issued a decision finding Burnett not disabled within the meaning

-1-

of the Act. (Tr. 21-37). The Appeals Council denied Burnett's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (Tr. 1-7). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Burnett was 37 years old at the time of his alleged onset date, and 42 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or

more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Burnett met the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since his alleged onset date. (AR 23). At step two, the ALJ found that Burnett had the following severe impairments: major depressive disorder, post-traumatic stress disorder (PTSD), alcohol dependence, degenerative disc disease, bilateral patellofemoral syndrome, right shoulder internal derangement, tinnitus, and migraine headaches. (AR 23). The ALJ concluded at step three that Burnett

did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (AR 24). The ALJ also found that while Burnett's impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (AR 31). The ALJ concluded that Burnett had the residual functional capacity to perform a reduced range of light work with various postural, environmental, and mental restrictions. (AR 27). The ALJ then found that although Burnett could not do any past relevant work, he was capable of performing light work as a cleaner/housekeeper or laundry worker, and sedentary work as a final assembler. (AR 37).

A.  **Medical Opinions**

Burnett argues the ALJ erred by not giving more weight to opinions provided by treating physician Karen Cody and examining psychologist Dr. Mark Mozer. A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The

weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

1. Dr. Cody

Dr. Karen Cody is a primary care physician with the Department of Veterans Affairs ("VA"), where Burnett has received much of his medical care. Dr. Cody saw Burnett for the first time in April 2010, and has prescribed medication for various things including migraine headaches and PTSD. (AR 447-718; 774-1060). In September 2014, Dr. Cody completed a Medical Source

weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

1. Dr. Cody

Dr. Karen Cody is a primary care physician with the Department of Veterans Affairs ("VA"), where Burnett has received much of his medical care. Dr. Cody saw Burnett for the first time in April 2010, and has prescribed medication for various things including migraine headaches and PTSD. (AR 447-718; 774-1060). In September 2014, Dr. Cody completed a Medical Source

Statement of Ability to do Work-Related Activities (Physical) form statement on which she indicated that Burnett could sit for one hour, stand for 30 minutes, and walk for 30-60 minutes at a time, but could do none of those activities for more than three hours total in an eight hour work day. (AR 1078). She found that Burnett would need to lie down frequently due to back pain, and could only walk three blocks without a cane. Dr. Cody also wrote that "chronic migraines 2-3x/wk impair [Burnett's] concentration and cognition until resolved." (AR 1082). Burnett argues the ALJ erred by not adopting these restrictions and giving Dr. Cody's opinion more weight.

The ALJ considered Dr. Cody's opinion and gave it some weight. For instance, Dr. Cody indicated on the form that Burnett could continuously lift and carry up to 20 pounds. (AR 1077). The ALJ actually found that Burnett was more limited in this respect than even Dr. Cody believed, and restricted him to light work with only occasional lifting and carrying of up to 20 pounds. (AR 27). To the extent that Dr. Cody identified limitations that were not consistent with the ALJ's residual functional capacity assessment, however, the ALJ rejected her opinion on the ground that it was not supported by her records and the objective medical evidence. As the ALJ pointed out, Dr. Cody's records reflected that Burnett's "physical examinations regularly showed no significant physical

–7–

objective findings." (AR 33.) In March 2011, for example, an MRI ordered by Dr. Cody showed only "mild multilevel degenerative disc disease." (AR 448-49). Radiology reports ordered by other VA providers between 2010 and 2013 were either normal or similarly showed mild abnormalities. (AR 987-1002). Physical examinations performed by Dr. Cody in April 2011 and September 2014 were unremarkable. (AR 580-83, 1174-75). The ALJ reasonably found that many of the limitations found in Dr. Cody's opinion were "not supported or warranted" by her records and the medical evidence, and properly gave the opinion little weight to the extent it was not consistent with the ALJ's assessment of Burnett's residual functional capacity.

    2.   <u>Dr. Nash</u>

Burnett argues the ALJ gave too much weight to the opinion of examining psychologist Dr. Mark Mozer, and should have credited the opinion of examining psychologist Dr. Michael Nash instead. Dr. Mozer examined Burnett in December 2013 and found that while Burnett might be suffering from PTSD, malingering was also a possibility. (AR 1064). Dr. Mozer observed that Burnett did not appear particularly anxious and found the details of the stressor Burnett claimed led to his PTSD "to be highly questionable, frankly incredible." (AR 1064). Dr. Mozer characterized Burnett's depression as mild, and found that he would have

little difficulty with activities of daily living but would have some limitations in social functioning based on his history of violence, aggressiveness, and anger issues. Dr. Mozer pointed out that if there was some concern about cognitive difficulties from a traumatic brain injury, memory testing might be helpful. (AR 1065). Dr. Mozer concluded that Burnett would likely be capable of "gainful activity but should probably avoid stressful positions." (AR 1065).

Approximately five months later, Dr. Michael Nash conducted a mental status exam and memory testing. (AR 1069). Dr. Nash found that while there were some variations in scores and Burnett had some mild to moderate memory problems in the area of spatial orientation, his memory functions were essentially intact and in the average range. (AR 1073). Dr. Nash nevertheless concluded that Burnett's "ability to engage in work related behavior is affected by difficulty remaining focused on a task, difficulty maintaining a schedule, and concerns about ability to maintain a spatial orientation." (AR 1074). Dr. Nash indicated that Burnett would need a flexible work schedule, suitable tasks, adequate supervision, and to avoid stress.

The ALJ effectively accounted for some of these limitations by limiting Burnett to unskilled light work, with no more than occasional interaction with others and only occasional changes to the typical work setting. (AR 27). The ALJ

–9–

otherwise gave little weight to Dr. Nash's conclusions, pointing out that they were apparently based in large part on Burnett's subjective report and allegations of symptoms. (AR 34). The ALJ found that those allegations were not consistent with Burnett's activities of daily living, which included driving and home schooling his children. (AR 34). The ALJ instead gave great weight to Dr. Mozer's opinion, noting that it was consistent with objective findings in other mental status examinations throughout the record. (AR 34). For example, Dr. Robert Bateen examined Burnett in July 2010 and July 2011, and in January 2014 provided an opinion as a state agency reviewing physician in which he found Burnett capable of engaging in at least simple, repetitive, low skilled work. (Ar 79). The ALJ reasonably weighed the medical opinions, and provided specific and legitimate reasons giving less weight to Dr. Nash's and more to those provided by Dr. Mozer and Dr. Bateen.

   B.   **Credibility**

Burnett contends the ALJ did not provide sufficiently clear and convincing reasons for discrediting his testimony. If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there

is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). The Commissioner argues the ALJ was not required to provide clear and convincing reasons for discounting Burnett's testimony because the record contains affirmative evidence that Burnett was malingering. *See Hadley v.* Colvin, 2013 WL 4206834 *2 (C.D. Cal. Aug. 14, 2013) ("The mere existence of affirmative evidence suggesting malingering vitiates the clear and convincing standard of review.") (*quoting Schow v. Astrue*, 272 Fed. Appx. 647, 651 (April 8, 2008)). In particular, the Commissioner cites Dr. Mozer's statement that Burnett was "possibly malingering," along with a December 2010 medical record reflecting that Burnett told his doctor "that he did not want to get a job because he did not want his ex-wife getting any more support from him" and "wished he was able to work without her getting anything." (AR 623). The Court finds this evidence is not enough to alter the clear and convincing standard of review. The Court further finds, however, that the ALJ satisfied that standard here by providing clear and convincing reasons for finding Burnett only partially credible.

The ALJ found Burnett only partially credible in part because his daily activities suggested he was not as limited as he alleged. Burnett reported that pain made it difficult for him to engage in a number of physical activities including walking, sitting, bending, and standing. (AR 196). He alleged needing help dressing himself, claimed he was unable to shower daily unless pain free, and indicated that he could only sometimes shave without help. (AR 192). Burnett also reported having difficulty paying attention for more than a few minutes at a time. (AR 196). Burnett testified that he gets migraine headaches three to four times a week, for seven to eight hours at a time. (AR 49-50). Burnett described the pain as so severe it makes him "want to pull my eyes out of my head" and leaves him unable to "do anything but maybe crawl to the toilet." (AR 49). As the ALJ pointed out, however, Burnett flew back and forth between Montana and Tennessee to fight for custody of his children, now cares for three of them, and has homeschooled them with the help of his teenage daughter. The ALJ noted that Burnett also reported fishing, using the internet for banking and adjusting his retirement funds, playing casino games, exercising and walking his dogs. (AR 32). The ALJ permissibly found the fact that Burnett was able to engage in those activities undermined his credibility as to the extent of his pain and limitations.

The ALJ further found that Burnett's allegations of disabling pain and limitations were not supported by the objective medical evidence. In particular, the ALJ discussed medical records reflecting that Burnett's physical examinations were relatively normal, imaging results showed mostly mild abnormalities, and mental status examinations were relatively benign. (AR 28-30, 492-93, 499-504, 521-32, 722-23, 976-97, 805-09, 1061-66). The ALJ reasonably found that Burnett's subjective complaints were not supported by the medical evidence as a whole. While it would have been error for the ALJ to discount Burnett's testimony based solely on the lack of objective medical evidence, it was one appropriate factor for her to consider. *See, e.g, Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

The ALJ also discounted Burnett's testimony based on his conservative course of treatment. (AR 32). The ALJ found with record support that Burnett's course of treatment had been relatively routine, conservative, and there had been few changes made to his medication regimen which helped him manage his symptoms. (AR 32). *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment").

The ALJ also found it significant that although Burnett alleged he could not work, he told one of his doctors in December 2010 that he did not want to work because he "did not want his ex-wife getting any more support from him" and "wished he was able to work without her getting anything." (AR 623). While that statement was not enough to vitiate the clear and convincing standard of review, the ALJ permissibly found that it undermined Burnett's credibility to the extent he alleged his impairments were so severe that he was unable to work. *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (upholding credibility finding where claimant "reported that he wanted to do volunteer work but refrained for fear of impacting his disability benefits").

To the extent the ALJ found Burnett's testimony regarding his limitations not entirely credible, he did so for the clear and convincing reasons described above.

### C. Veterans Administration Disability Rating

Burnett argues the ALJ erred by not giving more weight to the 90% disability rating assigned him by the VA. It is well-established in the Ninth Circuit that the ALJ must consider a VA disability rating. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *Valentine v. Commissioner Social*

*Security Administration*, 574 F.3d 685, 694-695 (9th Cir. 2009). In doing so, the ALJ must "ordinarily give great weight to a VA determination of disability" due to "the marked similarity between these two federal disability programs." *McCartey*, 298 F.3d at 1076. Nevertheless, while "the ALJ must consider the VA's finding in reaching his decision," he is not bound "to reach an identical result." *McCartey*, 298 F.3d at 1076. Because the VA's criteria for determinating disability are different from those employed by the Social Security Administration, "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCarty*, 298 F.3d at 1076**.**

Most of the medical records in this case are from the Fort Harrison VA Medical Center. (AR 447-718, 737-54, 774-1060, 1084-1273). The VA has determined that Burnett is 90% disabled due to his physical and mental service-related impairments. (See e.g. AR 1215, 1234 ). The ALJ acknowledged the VA's disability determination, but gave it little weight on the ground that it was not consistent with Burnett's broad activities of daily living, not supported by the objective medical evidence, and not consistent with the record as a whole. (AR 32). In doing so, the ALJ evaluated the significant probative evidence of record,

including the medical records from Burnett's VA treatment providers. For example, the ALJ discussed a report by Dr. Bateen, who performed a Compensation and Pension Examination in July 2010 and diagnosed him with PTSD and depression related primarily to situational stressors. (AR 693-94 ). Dr. Bateen wrote that Burnett's PTSD would likely cause "occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks." (AR 694). Dr. Bateen explained that following simple directions would be within Burnett's capabilities, and indicated that he would "do best at work that requires no more than very brief and superficial interactions with others." (AR 694). The ALJ specifically accommodated for these limitations by limiting Burnett to unskilled work with "no more than occasional interaction with supervisors, coworkers, and the public." (AR 27). The ALJ also found that Burnett "cannot work in tandem with supervisors or coworkers and can do no work directly with the public as part of his job duties." (AR 27). In August 2011, Dr. Bateen confirmed after examining Burnett again that he "did not exhibit sufficient symptoms in order to establish a diagnosis of cognitive disorder." (AR 493). As discussed above, the ALJ also considered evidence of Burnett's daily activities and VA medical records reflecting that Burnett's physical examinations

were relatively normal, imaging results showed mostly mild abnormalities, and mental status examinations were relatively benign.

It is evident from the ALJ's decision that she reviewed, considered, and weighed the medical evidence on which the VA's disability rating was based. Having done so, the ALJ permissibly gave the VA rating little weight because the Social Security Administration uses different criteria for determining disability and the VA disability rating was not supported by the underlying evidence.

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that Commissioner's decision be affirmed

DATED this 11th day of August, 2016

_____
Jeremiah C. Lynch
United States Magistrate Judge